UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY GEORGE ESTRADA,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No.: 1:14-cv-02098-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Anthony George Estrada ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

**FACTS AND PRIOR PROCEEDINGS**

On October 27, 2011, Plaintiff filed his application for disability insurance benefits. AR 139-40.[1] Plaintiff alleged that he became disabled on January 1, 2009, due to mental illness. AR 81, 141. Plaintiff's application was denied initially and on reconsideration. AR 81-84, 88-92. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Serena S. Hong held a hearing on June 21, 2013, and issued an order denying benefits on August 23, 2013. AR 7-18. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3, 5-6. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on June 21, 2013, in Fresno, California. AR 23-44. Plaintiff appeared and testified. AR 25. He was represented by attorney Melissa Proudian. AR 25. Impartial Vocational Expert ("VE") Judith Najarian also testified. AR 40.

Plaintiff was born in 1974. He lives with his wife and five children. His wife receives aid for his stepson and his youngest daughter. Plaintiff also has Section 8 and receives food stamps. He has never received unemployment or state disability. AR 27.

In response to questions from the ALJ, Plaintiff testified that he has a GED, but no special vocational training. He last worked for a few weeks in 2009 at Furniture City. He was in the warehouse, but had to quit because he was overwhelmed. AR 28-29. Before that, he worked part-time for about a year at Leonardo's Pizzeria as a delivery driver earning $600 or $700 per month. Plaintiff also worked as a driver for It's My Party Rentals and a pizza delivery driver for Dominion Pizza and Hungry Howie's. Plaintiff also testified regarding various short-term jobs. AR 28-32.

When asked what prevented him from working, Plaintiff testified that he gets stressed, confused and scared. He feels safer at home. AR 32-33.

When asked about treatment, Plaintiff reported receiving treatment at Fresno Mental Health, where he is prescribed medications. He does not attend classes or therapy. His current medications,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

which he started after his hospitalization in 2011, are helping. Plaintiff explained that he was hospitalized in November 2011 for mental health issues. AR 34-35.

When asked about prior drug and alcohol use, Plaintiff testified that he is not using illegal drugs. He is no longer drinking or using marijuana. He last used methamphetamine in 2011 before he went to the hospital. AR 35.

When questioned about a typical day, Plaintiff reported that he does not have a schedule. He tries to help his wife, but she knows that he gets overwhelmed. He takes out the trash, cleans up after himself and helps his children with laundry. He does not take care of the kids by himself because his wife does not think he could handle it. He does not cook and his wife does most of the grocery shopping. He does not do anything outside the home or visit family and friends. AR 37-38.

Plaintiff reported that he may have trouble understanding instructions and he has a hard time maintaining concentration. He can concentrate on a task for ½ hour to 1 hour before he starts to lose focus. When he gets overwhelmed at work, he stops working and either leaves or does not return. Even though he is taking medication on a regular basis, he still gets overwhelmed at home and will leave the room until he is calm. It usually takes ½ hour to 1 hour to gather himself. He tries to pray, which usually helps. This happens almost once a day. AR 38-40.

In response to questions from his counsel, Plaintiff testified that he does not have side effects from his medications. When he goes into his room, he will just lie down until he feels like he can go back. AR 40.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Judith Najarian. AR 40. The VE testified that Plaintiff's past work was classified as deliverer, outside and truck driver, light. AR 41-42. The ALJ asked the VE hypothetical questions, contemplating an individual of claimant's age, education, and past jobs. In her first hypothetical, the ALJ asked the VE to consider an individual who could perform work at all exertional levels, but was limited to performing only simple, routine tasks with no public contact and only superficial interaction with co-workers and supervisors. The VE testified that this individual could not perform any of Plaintiff's past work, but there was other work in the national economy that such an individual could perform, such as vacuum bottle assembler, poultry boner on a line, and poultry hanger. AR 42-43.

In a second hypothetical, the ALJ asked the VE to consider the same individual who would be off task 25 percent of the time due to symptoms of his impairment. The VE testified that there would be no jobs for this individual. AR 43.

**Medical Record**

The entire medical record was reviewed by the Court. AR 239-600. The medical evidence, summarized here, will also be referenced below as necessary to this Court's decision.

On April 3, 2009, Plaintiff sought emergency room treatment for psychiatric complaints. He reportedly had not been taking his psych medication for a year. AR 681. On April 5, 2009, Plaintiff was admitted to Community Regional Medical Center – Behavioral Health on a 5150 hold for danger to self and suicidal ideation. It later became a voluntary admission on April 6, 2009. Plaintiff was discharged on April 10, 2009, with diagnoses of schizoaffective disorder, depressed type, and panic disorder with agoraphobia. He was prescribed Abilify, Zoloft and Ativan. AR 291-300.

On April 13, 2009, following discharge, Plaintiff sought follow-up treatment for medications at Fresno County Mental Health. AR 307. A plan of care was established. AR 315. A plan of care also was developed in May 2009 with a new case manager. Plaintiff reported that he had problems with auditory and visual hallucinations for at least 10 years, which caused him to be paranoid and aggressive. He also admitted depression. AR 404-05.

On July 24, 2009, Plaintiff reported doing better with fewer mood swings, fewer auditory hallucinations and less anger. Plaintiff was given medication refills. AR 400.

On September 16, 2009, Plaintiff reported increased mood swings, auditory hallucinations and anger. Plaintiff requested a change of Ativan to Klonopin due to frequent arguments. Plaintiff was given refills to avoid the hospital. AR 398.

On September 18, 2009, Dr. Shireen R. Damania completed a consultative psychiatric evaluation. AR 349-52. Plaintiff reported feeling more stable on his current medications. AR 350. On mental status examination, Plaintiff's mood was mildly depressed and anxious. He had no noted difficulties in memory, concentration, persistence and pace. There also was no evidence of any emotional lability or deterioration. Dr. Damania diagnosed depressive disorder not otherwise specified, anxiety disorder not otherwise specified and polysubstance dependence in remission by

history. Dr. Damania assigned Plaintiff a Global Assessment of Functioning ("GAF") of 61. AR 351. Dr. Damania opined that Plaintiff was able to understand, carry out and remember simple one- and two-step job instructions in a work like setting. He also was able to respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision. AR 352.

On October 14, 2009, Dr. H. Biala, a state agency medical consultant, completed a Mental Residual Functional Capacity Assessment form. AR 355-57. Dr. Biala opined that Plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions. AR 355. Dr. Biala concluded that Plaintiff's cognition was intact for simple tasks, his concentration, persistence and pace were sufficient for 2 hour intervals, 8-hour day and 40-hour week, he was socially available for superficial interactions and could adapt to workplace stressors. AR 357.

Dr. Biala also completed a Psychiatric Review Technique form. AR 358-68. According to Dr. Biala, Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. AR 366. Dr. Biala opined, however, that Plaintiff could do simple work if treatment compliant. AR 368.

On January 20, 2010, Plaintiff reported some auditory hallucinations, paranoia and angry outburst behavior, along with hypersomnia. Plaintiff's medications were refilled. AR 397.

On April 21, 2010, Plaintiff reported increased anxiety and recent depressed feelings. Plaintiff was given medication refills for improvement after an adjustment due to hypersomnia. AR 394.

On June 30, 2010, Plaintiff reported increased anxiety and depression with current medications. Plaintiff's medications were adjusted. AR 392.

On November 30, 2010, Plaintiff reported that he had been medication compliant for three or four weeks and felt his current medications were effective. AR 390.

On July 10, 2011, Plaintiff sought emergency room treatment at Community Regional Medical Center for suicidal ideation. Plaintiff reported taking crystal meth prior to coming to the hospital. Plaintiff stated that he was off his medications for a year. He reportedly was feeling overwhelmed about relapsing with his methamphetamine addiction. Plaintiff had been using meth for over 5 years. Plaintiff was to be referred to a comprehensive addiction program. AR 572-80, 587.

On July 27, 2011, Plaintiff saw Dr. Mark Chofla at Fresno County Mental Health. Plaintiff reported that he had not been taking his medications for a year. Plaintiff also reported that all

symptoms had improved since off of illicit substances and pysch prescriptions. Plaintiff complained of poor sleep at times, but no mania or psychosis. He requested disability certification, but Dr. Chofla indicated that he could not give a statement in support of disability. Dr. Chofla identified Plaintiff's diagnoses as schizoaffective disorder by history only, rule out substance induced mood and thought disorder from past, rule out bipolar and rule out major depression. Plaintiff was noted to be stable and improved even without prescription compliance. Dr. Chofla was to start Plaintiff on Seroquel for sleep and history of psychosis mood. All prescriptions were discontinued because Plaintiff was improved without medication compliance. AR 430-31.

On November 16, 2011, Plaintiff presented to the Community Regional Medical Center emergency department with his wife and mother reporting strange behavior. Plaintiff was put on a 5150 hold because he indicated wanting to overdose on medication. He was transferred to Community Behavioral Health Center for additional care and management. At the time of admission, he was depressed and sobbing. He also endorsed paranoia. Plaintiff had been non-compliant with medications leading to his decompensatory behavior with suicidal ideations and was positive for meth abuse. He was restarted on the medication regimen that was beneficial to him in the past, Depakote and Zoloft, with no side effects. AR 436-39, 461, 466. On November 21, 2011, Plaintiff was discharged from the hospital with instructions to follow-up with Dr. Chofla. AR 444.

On December 5, 2011, Plaintiff told Dr. Chofla that he stopped taking Seroquel because it was making him sleepy. Plaintiff reportedly had been admitted to the behavioral health center because his mind was racing, he was talking fast, crying and losing control of his thoughts. Plaintiff admitted smoking meth 1-2 weeks prior to his hospital admission. Dr. Chofla indicated the Plaintiff was stable and improved when not using meth. Plaintiff was prescribed Zoloft and Depakote. AR 419-20.

On February 8, 2012, Plaintiff reported doing very well. Dr. Chofla opined that Plaintiff's schizoaffective disorder diagnosis was questionable, and the diagnosis was most likely substance induced mood and thought disorder. Plaintiff's condition was noted to be stable and improved when he was not high on meth and even without prescription compliance. AR 417-18.

On April 13, 2012, Plaintiff reported to Dr. John Schaeffer at Fresno County Mental Health that his Depakote caused side effects, including feeling easily agitated and hostile. These feelings of

1  agitation/hostility were not present before Depakote. Dr. Schaeffer discontinued the Depakote. AR
2  413. Dr. Schaeffer noted that he found no evidence in support of a diagnosis of schizoaffective
3  disorder and it was removed on April 12, 2012. Dr. Schaeffer also noted that he found no evidence to
4  support a bipolar diagnosis or a major depression and they also were removed on April 12, 2012. Dr.
5  Schaeffer indicated that Plaintiff's diagnosis had been changed to mood disorder not otherwise
6  specified and rule out substance induced mood disorder. Dr. Schaeffer also indicated that Plaintiff had
7  ongoing use of alcohol and cannabis.
8       On May 11, 2012, Plaintiff reported feeling better, with a better mood and less irritability. AR
9  411. Plaintiff's treating physician, Dr. Schaeffer, indicated that Zoloft was helping with depressive
10 symptoms and anxiety and Seroquel was helping with anxiety and sleep. AR 412.
11      On August 10, 2012, Plaintiff reported doing okay, but noted that Seroquel was not helping as
12 much for sleep. Plaintiff's Seroquel was increased. AR 599-600.
13      On October 2, 2012, Plaintiff reported that his sleeping was worse on Seroquel, but his mood
14 was "okay, stable." Dr. Schaeffer noted that Zoloft was helping with depressive symptoms and
15 anxiety, but Seroquel was not helping with anxiety or sleep and possibly causing akathisia. Dr.
16 Schaeffer discontinued Seroquel and started Plaintiff on Vistaril for insomnia. AR 598.
17      On October 26, 2012, Plaintiff reported that the Vistaril helped for his sleep. He did not have
18 any questions or concerns. AR 595-96.
19      On February 8, 2013, Plaintiff reported that his mood was "good, stable" and he just needed
20 medication refills. His medications were continued. AR 591-93.
21 **<u>The ALJ's Decision</u>**
22      Using the Social Security Administration's five-step sequential evaluation process, the ALJ
23 determined that Plaintiff did not meet the disability standard. AR 10-18. More particularly, the ALJ
24 found that Plaintiff had not engaged in any substantial gainful activity since January 1, 2009, the
25 alleged onset date. AR 12. Further, the ALJ identified depressive disorder and anxiety disorder as
26 severe impairments. AR 12. Nonetheless, the ALJ determined that the severity of Plaintiff's
27 impairments did not meet or exceed any of the listed impairments. AR 12-13. Based on her review of
28 the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")

to perform a full range of work all exertional levels, but with the following nonexertional limitations: simple, repetitive tasks, superficial interaction with coworkers and supervisors and no public contact. AR 13-16. The ALJ found that Plaintiff could not perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 17. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 17-18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff contends that the ALJ erred by (1) improperly weighing the treating physician's opinions; (2) failing to resolve conflicts in the evidence regarding Plaintiff's medication compliance and ongoing symptoms; and (3) failing to properly consider lay witness testimony.

## DISCUSSION[2]

### 1. Medical Opinions

In his opening brief, Plaintiff argues that the ALJ erred by failing to explain the weight attributed to the opinions of his treating mental health professionals. (Doc. 18 at 7-8). The Commissioner counters that because Plaintiff does not identify the particular opinions the ALJ failed to consider or explain how those opinions result in greater limitations than those found by the ALJ, any such argument has been abandoned. (Doc. 23 at 6). In the reply brief, Plaintiff contends that the ALJ failed to consider the April 2009 Plan of Care established by Dr. Luyen Luu (AR 291, 306), the 2009 and 2010 records of treating psychiatrist Dr. Josephina Collado (394-400), and the August 2012 treating record of Dr. John Schaeffer (AR 600).[3]

Although a district court need not consider arguments raised for the time in a reply brief, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), the Court will address Plaintiff's contention that the ALJ failed to properly consider the opinions of Plaintiff's treating physicians, Drs. Luu, Collado and Schaeffer. Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.
[3] Plaintiff also references a mental health assessment completed by Carol Grainger, LMFT. (Doc. 24 at 5). A LMFT is not an acceptable medical source under the Social Security regulations, 20 C.F.R. §§ 404.1502, 404.1513. Therefore, the ALJ was not required to assign the same deference as an acceptable medical source. See 20 C.F.R. 404.1524. As such, the ALJ properly assigned greater weight to the opinions of Dr. Damania and the state agency medical consultants, acceptable medical sources. *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating physician's opinion is not contradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31. The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, an ALJ need not recite "magic words" to reject a treating physician opinion and it is proper for the Court to draw specific and legitimate inferences from the ALJ's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751, 755 (9th Cir. 1989).

<u>Dr. Luu</u>

With regard to Dr. Luu, Plaintiff challenges the ALJ's failure to address a Plan of Care developed on April 14, 2009, following Plaintiff's 5150 hold for suicidal ideations. (Doc. 24 at 3-4). While Plaintiff correctly notes that the Plan of Care identified a "significant impairment" and a "probability of significant deterioration" (AR 306), Plaintiff omits evidence that the 5150 hold followed his non-compliance with medications for a year's time and that he subsequently stabilized on medications prior to his discharge from the hospital on April 10, 2009. AR 292-93. Plaintiff also omits that the Plan of Care was developed after his discharge from the hospital for medication management and refills by Dr. Luu. AR 304-05. Given this record, it is apparent that the ALJ did not rely on the April 2009 opinion of Dr. Luu because of specific evidence demonstrating that Plaintiff's 5150 hold followed non-compliance with medication and that Plaintiff's mental condition remained stable when he was compliant with his prescribed medication. AR 16. Generally, the fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Magallanes*, 881 F.2d at 751-54 (ALJ may reject treating physician's opinion that is contradicted by evidence in the record).

Plaintiff contends, however, that evidence contradicts the ALJ's determination that Plaintiff's mental condition is generally stable when medically complaint and not engaging in substance abuse.

To support this argument, Plaintiff references certain treatment records indicating that despite medication compliance, Plaintiff had increased anxiety, was more depressed and more agitated and continued to hear voices. (Doc. 18 at 8). The records referenced by Plaintiff are from September 16, 2009, January and April 2010, and March and April 2012. AR 392, 397, 398, 414-15. As discussed below, and contrary to Plaintiff's argument, these records do not contradict the ALJ's determination regarding Plaintiff's mental condition.

First, in the records from September 16, 2009, shortly after Plaintiff's release from the hospital, it was noted that Plaintiff had increased mood swings, auditory hallucinations, and anger; Plaintiff's medications were adjusted. AR 398. Yet, only two days later, Plaintiff informed the consultative examiner that he was feeling more stable on his current medications. On mental status examination, Plaintiff was only mildly depressed and anxious. AR 350-51. This evidence from the consultative examiner, based on Plaintiff's own statements, supports the ALJ's determination regarding Plaintiff's stability on medications.

Second, in the records from January 2010 and April 2010, Plaintiff was reportedly compliant with his medications. However, Plaintiff later informed Community Regional Medical Staff in July 2011 that he had been off his medications for a year and had been using methamphetamine for over 5 years. AR 572-80, 587. At one point, Plaintiff admitted only a brief period of abstention from methamphetamine between 2006 and 2008. AR 379. Additionally, in November 2011, Plaintiff reported that his daily use of amphetamines stopped two months prior. AR 378. These records suggest that Plaintiff was engaged in methamphetamine use in 2010. Thus, Plaintiff's reliance on records in 2010 is undermined by Plaintiff's continuing drug use.

Third, in records dated March 7, 2012, Dr. Schaeffer noted that Plaintiff's condition had improved in response to medication and that Plaintiff was "stable and improved when not high on meth." AR 415-16. In records from April 13, 2012, Plaintiff reported that he was feeling easily agitated/hostile as side effects from Depakote. AR 413-14. Dr. Schaeffer discontinued the Depakote and noted on mental status that Plaintiff appeared calm and relaxed. AR 413. Subsequent records indicated that Plaintiff improved with discontinuance of Depakote and that Plaintiff was stable and improved when not high on methamphetamine. AR 412. Further, in treatment records, Dr. Schaeffer

attributed Plaintiff's polysubstance abuse as the possible cause of mood instability. AR 412, 414, 416. In direct contrast to Plaintiff's assertions, Dr. Schaeffer's records serve as substantial evidence supporting the ALJ's determination that Plaintiff's mental condition was generally stable when medically complaint and not engaging in substance abuse.

Dr. Collado

Plaintiff contends that the ALJ failed to discuss or evaluate Dr. Collado's treatment records dated July 24, 2009, September 16, 2009, January 20, 2010 and April 21, 2010. (Doc. 24 at 4; AR 400, 398, 397, 394, 395). With regard to records from July 24, 2009, and September 16, 2009, it is evident from the record that the ALJ rejected Dr. Collado's opinion in favor of the contrary opinion of the consultative examiner, Dr. Damania, which was rendered nearly contemporaneously with these records on September 18, 2009. AR 15, 349-52. The contrary opinion of the consultative examiner constitutes a specific and legitimate reason for rejecting the early treatment records of Dr. Collado. *See Tonapeytan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (cite).

With regard to Dr. Collado's treatment records from January 20, 2010 and April 21, 2010, there was alternate record evidence suggesting that Plaintiff had not abstained from methamphetamine use during this time frame. AR 378, 572-80, 587. Given this record, it can be inferred that the ALJ rejected Dr. Collado's treatment records during the time period of Plaintiff's admitted use of methamphetamine. In his written decision, the ALJ specifically determined that Plaintiff was medically stable when not engaging in substance abuse. AR 16.

Dr. Schaeffer

Plaintiff contends that also missing from the ALJ's evaluation were the August 10, 2012 treatment records of Dr. Schaeffer. (Doc. 24 at 5-6). However, as discussed above, Dr. Schaeffer's treatment records were not inconsistent with the ALJ's determination that Plaintiff's mental condition was generally stable when medically compliant and not engaging in substance abuse. Indeed, Dr. Schaeffer expressly opined that Plaintiff was "stable and improved when not high on meth" and that Plaintiff had a substance abuse induced mood disorder. AR 414, 416. Dr. Schaeffer's opinion mirrored the ALJ's finding that Plaintiff's mental condition was stable when medically compliant and not engaging in substance abuse. Even if the ALJ had assigned substantial weight to Dr. Schaeffer's

treatment records, the disability determination likely would not change. Thus, any error in failing to assign weight to Dr. Schaeffer's treatment records is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error harmless where it is inconsequential to the ultimate non-disability determination).

### 2. Medication Compliance and Ongoing Symptoms

Plaintiff next argues that the ALJ failed to resolve the conflict between Plaintiff's treating records as to whether he was medication compliant and the effect of substance abuse. (Doc. 18 at 7). Plaintiff's argument is, in essence, a challenge to the ALJ's reasons for doubting Plaintiff's credibility.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."). Factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the first step of the analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 16. At the second step, however, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. AR 16.

Plaintiff asserts that the ALJ erred in discounting his credibility based on noncompliance with treatment. In particular, Plaintiff argues that the ALJ's finding that Plaintiff had been "less than

compliant with medical recommendations, choosing to stop taking prescribed medications" (AR 16) is contradicted by record evidence that Plaintiff stopped taking some of his medications due to perceived side effects. Plaintiff also suggests that his noncompliance with treatment was a result of his mental impairment and was not willful or unjustifiable. (Doc. 18 at 7).

The Ninth Circuit has observed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citations and quotations omitted). As a result, courts "do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison v. Colvin*, 759 F.3d 995, 1018 n. 24 (9th Cir. 2014) (citations omitted).

Here, of the records cited by Plaintiff, only two refer to Plaintiff discontinuing medications on his own accord due to side effects. AR 413, 430. Moreover, such instances do not account for other treatment records demonstrating that Plaintiff stopped medications when he ran out (AR 439) or that he was using methamphetamine (AR 378, 572-80, 587 ). In sum, the record does not show that Plaintiff's decisions to discontinue his medications were the result of his depressive disorder, anxiety disorder or any other psychiatric issue. *Molina*, 674 F.3d at 1104 (no medical evidence that resistance to treatment was attributable to mental impairment).

Plaintiff also argues that the ALJ erred in finding that when medically compliant and not engaging in substance abuse, Plaintiff's mental condition was stable. (Doc. 18 at 8). As discussed above, this determination was not error and is supported by substantial evidence.

In addition to the foregoing, the ALJ provided other reasons for discounting Plaintiff's credibility. For instance, the ALJ discounted Plaintiff's credibility because he participated in activities inconsistent with an inability to engage in any work activity. AR 16. An ALJ may properly consider a plaintiff's daily activities when discounting a plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"); *Mulligan v. Colvin*, No. 1:14-cv-1023-BAM, 2015 WL 5687661, at * 5 (E.D. Cal. Sept. 25, 2015) (discounting credibility where plaintiff maintained his own personal hygiene, prepared

meals, performed light household chores and yard work once or twice a week, and shopped a couple times a month). Here, the ALJ found that Plaintiff participated in extensive daily activities, including caring for his children and shopping for groceries. AR 16, 206-13. The ALJ also considered reports from Plaintiff's wife indicating that Plaintiff cooked, helped care for their pets, took care of personal needs, washed dishes, vacuumed, took out the trash, did laundry, mowed the lawn and paid bills. AR 15, 194-201.

Additionally, the ALJ provided her own observations regarding Plaintiff's conduct during the hearing. In particular, the ALJ cited Plaintiff's ability to participate in the hearing closely and fully without distraction. AR 16. The Ninth Circuit has determined that, in assessing a claimant's credibility, an ALJ may rely upon "ordinary techniques of credibility evaluation," including the ALJ's personal observations of the claimant at the administrative hearing. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (determining that ALJ properly relied in part on claimant's demeanor at hearing in assessing credibility); *Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (observations of ALJ during the hearing, along with other evidence, is substantial evidence for rejecting testimony). Here, the ALJ was entitled to consider observations that Plaintiff could participate in the hearing without distraction, which contradicted hearing testimony regarding maintaining concentration.

### 3. Lay Testimony

Plaintiff also argues that the ALJ erred by failing to consider the lay testimony of his mother, Sharon Miles. (Doc. 18 at 5-6). An ALJ must take into account competent lay witness testimony. *Molina*, 674 F.3d at 1114; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citation omitted).

Here, Plaintiff's mother, Sharon Miles, provided written lay witness testimony regarding Plaintiff's condition and limitations. Ms. Miles reported that Plaintiff suffered from moodiness, severe anxiety, irritability, and depression. He tried to avoid all social situations and did not like to leave the house. Ms. Miles also reported that Plaintiff lacked energy, tired easily, had a poor appetite and had very poor concentration even with simple tasks. Ms. Miles indicated that Plaintiff was unable to deal

with everyday normal changes and his wife handled the shopping, cooking, cleaning and bill paying. According to Plaintiff's mother, Plaintiff showered, brushed his teeth and shaved once a month, but had to be reminded by his wife. AR 234-35.

Plaintiff correctly notes that the ALJ did not address this lay witness testimony. As such, the ALJ erred by failing to provide germane reasons for disregarding it. Nonetheless, the Court finds this error harmless because Ms. Miles' statement did not describe any limitations beyond those already alleged by Plaintiff himself, which were rejected by the ALJ. *Molina*, 674 F.3d at 1121-22 (an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits lay witness' claims); *Valentine*, 574 F.3d at 693-94.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Anthony George Estrada.

IT IS SO ORDERED.

Dated: **March 25, 2016**              /s/ *Barbara A. McAuliffe*
                                       UNITED STATES MAGISTRATE JUDGE